IN THE UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| BRUCE BZURA,<br><br>   Plaintiff,<br><br>vs.<br><br>ROBERT MOSS and WENDY MOSS,<br><br>   Defendant. | Civil Case No.: 1:17-cv-00813 (DAB) (GWG)<br><br>**VERIFIED COMPLAINT**<br><br>**JURY TRIAL DEMANDED** |

Plaintiff, Bruce Bzura ("Plaintiff"), by and through his attorneys, Norris McLaughlin & Marcus, P.A., alleges, upon personal knowledge as to himself and upon information and belief as to other matters, as and for his complaint against defendants Robert Moss and Wendy Moss (jointly, "Defendants") as follows:

## THE PARTIES

1. Plaintiff Bruce Bzura is an individual residing in Marlboro, New Jersey.

2. Defendant Robert Moss is an individual residing, upon information and belief, in Woodbury, New York.

3. Defendant Wendy Moss is the ex-wife of defendant Robert Moss and, upon information and belief, is a resident of the State of New York.

## JURISDICTION AND VENUE

4. This Court has jurisdiction over the subject matter of the Complaint pursuant to 28 USC § 1332, since the amount in controversy exceeds the sum of $75,000, exclusive of interest and costs, and is between a citizen of the State of New Jersey and citizens of the State of New York.

1

5. Venue is proper in this district pursuant to 28 U.S.C. § 1391, because a substantial portion of the events or omissions giving rise to the claim occurred in the Southern District of New York.

## STATEMENT OF FACTS

6. On November 7, 2015, Plaintiff's daughter, Amy Bzura, became engaged to be married to the son of Defendant Robert Moss and Defendant Wendy Moss, Bradley Moss, after the young couple had already been dating and living together happily for more than three years.

7. After a year of planning, an extravagant wedding ceremony and reception was scheduled for Saturday, October 29, 2016 at The Pierre Hotel in New York City. Unfortunately, this wedding ultimately did not occur for the reasons explained herein.

8. On Friday, October 28, 2016, a rehearsal dinner was held at the Blue Water Grill, a restaurant located at 31 Union Square W, New York, NY 1000. The rehearsal dinner was hosted by Defendant Robert Moss.

9. Adam Bzura, Plaintiff's son and the bride's brother, prepared a heartfelt toast for the bride and groom, which included a video component that he had taken much time to create and produce himself. The video contained photographs and music capturing memories from the bride and groom's relationship. At no time did the bride and groom themselves oppose this video being played, as it was a kind gesture from the bride's brother. The groom's brother, Michael, knew about and had approved of the video being played.

10. Instead of allowing Adam Bzura to present his toast and accompanying video as planned, Defendant Robert Moss inexplicably and angrily declared that Adam was not allowed to speak at the dinner. Robert Moss threatened Adam Bzura by saying, "Do you know what I can do to you?" He also threatened to kick Adam out of the rehearsal dinner.

11.   At this point, members of both families became upset and the events began to escalate from there.  For example, the situation at the rehearsal dinner got to the point where Defendant Wendy Moss entered into Adam Bzura's personal space and began arguing with him.  In addition, Michael punched Adam in the face, egged on by Robert Moss.  Robert Moss also charged Adam, and was prevented from assaulting Adam by plaintiff Bruce Bzura holding him back.  The rehearsal dinner ended in shouting and tears.

12.   That evening, Defendant, completely on his own accord and against the bride and groom's wishes, called off the wedding entirely.  At Defendant Robert Moss's behest, Defendant Wendy Moss began texting and calling guests and telling them not to come to the wedding planned for the next day.

13.   Defendant did not stop there.  Defendant's son, Bradley Moss, works for Defendant in their family business, Long Island Pipe Supply, Inc.  Defendant intimidated and threatened his son Bradley, indicating that if he went forward with marrying Amy Bzura, Defendant would fire Bradley.

14.   After the aborted rehearsal dinner, defendant Wendy Moss, on her own and at the direction of Robert Moss, began texting their invited guests telling them not to show up for the wedding.

15.   Not yet satisfied with his destruction of a wedding and ruining his own relationship with his son, that Saturday, October 29, Defendant went even further.  Upon information and belief, he called his attorney to add a codicil stating that his son, Bradley, must be cut out of Defendant's will entirely if he moves forward with marrying Amy Bzura.  Defendant's continued and vicious intimidation effectively destroyed the bride and groom's relationship for good at that point.

16. On Monday, October 31, when Amy Bzura tried to go to the couple's shared apartment to pack her things, she was not allowed entry, as he had changed the locks over the weekend. Upon information and belief, Defendant directed his son to not allow her entry in an attempt to further humiliate her.

17. Plaintiff Bruce Bzura had to pay his attorneys to seek an emergency injunction on Amy's behalf that week so that she would be allowed entry to the apartment. The injunction's return date was scheduled for that Thursday, November 3.

18. With the injunction hearing imminent, on Wednesday, November 2, Defendant and his son finally agreed to allow Amy entry. Amy was dismayed and mortified that an off-duty police officer would have to accompany her to pack all of her belongings. Upon information and belief, Defendant orchestrated this, despite Amy giving Defendant and his son no reason to believe she would steal anything or cause any trouble.

19. This entire series of events sparked by Defendant's extreme malicious and unjustified behavior has caused Plaintiff, his daughter, and their entire family undue distress, irreparable emotional damage, and continued humiliation within their social circles and community.

20. To make matters worse, as the father of the bride, Plaintiff had agreed to pay for almost all of the wedding's expenses long before the fateful rehearsal dinner. The wedding's expenses amounted to approximately $350,000.

21. The only exception to this was that Defendant had agreed to pay for 79 guests of his and his ex-wife's, which Defendant had personally invited to the wedding.

22. In addition, Defendant agreed to pay for the rehearsal dinner in its entirety, as the groom's family traditionally offers to do. Plaintiff had never, at any point in time before the rehearsal dinner, agreed to pay for any portion of the rehearsal dinner.

23. Although the wedding did not occur, Plaintiff still had to pay the full amount owed for the wedding in advance, with the understanding that Defendant would pay him back for the cost of his 79 guests, amounting to $89,919 in total.

24. To date, Defendant has not paid Plaintiff back any portion of the monies owed for his 79 guests -- let alone offered to offset any of the other economic or emotional damage he has selfishly and unilaterally caused Plaintiff, his daughter, and their family to endure.

## FIRST COUNT
## BREACH OF CONTRACT

25. Plaintiff repeats each and every allegation set forth above as if set forth at length herein.

26. At all relevant times, a valid and enforceable contract existed between Plaintiff and Defendant for Defendant's payment of $89,919 to Plaintiff for the 79 guests that Defendant personally invited to the wedding and agreed to pay for.

27. Defendant materially breached that contract when he did not pay Plaintiff back the monies agreed upon.

28. As a direct and proximate result of such breach, Plaintiff has suffered damages.

**WHEREFORE**, Plaintiff seeks judgment in his favor and against Defendant, Robert Moss, awarding all damages proximately caused by Defendant's misconduct, including consequential damages, compensatory damages, out-of-pocket damages, counsel fees, costs of suit, and all other relief that the Court deems just and appropriate.

## SECOND COUNT
## TORTIOUS INTERFERENCE WITH CONTRACT/PROSPECTIVE ECONOMIC ADVANTAGE

29. Plaintiff repeats each and every allegation set forth above as if set forth at length herein.

30. Plaintiff had a contractual relationship with The Pierre Hotel for the full cost of the wedding, amounting to $195,963.96, which constituted a contract/protectable right for purposes of a tortious interference claim. In addition, the full cost for the entire wedding exceeded $350,000.00.

31. Defendants interfered with this contractual relationship, as well as Plaintiff's prospective economic advantage, by unilaterally causing the wedding to not occur and did so intentionally and with malice.

32. As a direct and proximate result of Defendants' conduct, Plaintiff has suffered damages.

**WHEREFORE**, Plaintiff seeks judgment in his favor and against Defendants, Robert Moss and Wendy Moss, awarding all damages proximately caused by Defendants' misconduct, including consequential damages, compensatory damages, out-of-pocket damages, counsel fees, costs of suit, and all other relief that the Court deems just and appropriate.

## JURY DEMAND

Pursuant to Fed. R. Civ. P. 38(b), plaintiff hereby demands a trial by jury on all issues so triable herein.

Dated: February 2, 2017

Respectfully submitted,

/s/ *Melissa A. Peña*
Melissa A. Peña, Esq.
Ami Bhatt, Esq.
NORRIS McLAUGHLIN & MARCUS, P.A
875 Third Avenue, 8th Floor
New York, New York 10022
Phone: 212-808-0700

Attorneys for *Plaintiff*,
Bruce Bzura