```
UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------X
BRUCE BZURA, LLC,

                    Plaintiff,
                                              17 Civ. 813 (DAB)
                                              MEMORANDUM & ORDER
          v.

ROBERT MOSS and WENDY MOSS,

                    Defendants.
------------------------------------X
```
DEBORAH A. BATTS, United States District Judge.

On February 2, 2017, Plaintiff Bruce Bzura filed a Complaint in the Southern District of New York against Defendants Robert Moss and Wendy Moss. Defendants filed a Rule 12(b)(6) Motion to Dismiss. Plaintiff amended his Complaint on April 20, 2017, asserting causes of action for breach of contract (Count 1), tortious interference with contract and tortious interference with prospective economic advantage (Count 2), and prima facie tort (Count 3). Defendants filed the instant Rule 12(b)(6) Motion to Dismiss on April 21, 2017, seeking dismissal of Counts 2 and 3. For the following reasons, the Court GRANTS Defendants' Motion to Dismiss.

I.   BACKGROUND[1]

Plaintiff is the father of Amy Bzura, the former fiancée of Defendants' son, Bradley Moss. On October 28, 2016, at the rehearsal dinner on the eve of the wedding ceremony, Defendants threatened the bride's brother – and Plaintiff's son – with harm ("Do you know what I can do to you?" said Defendant R. Moss), Defendants and Defendants' son prevented the bride's brother from delivering a celebratory toast to the bride and groom, Defendant R. Moss "egged on" his son while he punched the bride's brother, Defendant R. Moss "charged" at the bride's brother and was prevented from assaulting him by Plaintiff. The rehearsal dinner ended in "shouting and tears." (Am. Compl. ¶ 10-12.)

Later that evening, Defendant R. Moss cancelled the wedding ceremony against the wishes of the bride and groom. (Am. Compl. ¶ 12.) Defendants called and texted guests, "telling them not to show up." (Am. Compl. ¶ 14.) The wedding did not occur.

The wedding ceremony was to be held at The Pierre, a hotel in New York City. Plaintiff made a non-refundable payment of

---

[1] The alleged facts herein are set forth in the Amended Complaint and are acknowledged by Defendants' Memorandum of Law in Support of Their Motion to Dismiss. (See Defs.' Mem. Law 3-4.) Although Defendants refer to Plaintiff's allegations as "specious," it is unclear what facts they dispute; notably, they do not dispute that the wedding was scheduled to take place on October 29, 2016, that Plaintiff had contracted with The Pierre to host to wedding, and that the wedding did not occur. On a Motion to Dismiss under rule 12(b)(6) of the Federal Rules of Civil Procedure, this Court shall presume true all factual allegations in the Amended Complaint.

$195,858.00 to The Pierre at some point prior to the wedding. (Am. Compl. ¶ 30, 20.) Total wedding expenses amounted to approximately $378,000.00. Defendant R. Moss had agreed to pay $89,919.00 to Plaintiff for the groom's anticipated 79 wedding guests.

On October 29, Defendant R. Moss arranged with his attorney to add a codicil to his will stating that Defendant's son would be removed from Defendant's will if he married Plaintiff's daughter. Defendant R. Moss also threatened to fire his son from the family business, Long Island Pipe Supply, Inc., if he proceeded with the marriage (Am. Compl. ¶ 13.)

Two days later, when Plaintiff's daughter attempted to enter the apartment she shared with Defendants' son to retrieve her personal effects, she discovered that the doors' locks had been changed. Acting at Defendant R. Moss's direction, Defendant's son had prevented her from returning to their shared apartment. Plaintiff arranged with his attorneys to seek an emergency injunction to grant Amy Bzura entry to the apartment. On the day before a hearing was scheduled on the injunction, Defendant R. Moss and his son allowed her to collect her things as long as she was accompanied by an off-duty police officer, "despite Amy giving R. Moss and his son no reason to believe she would steal anything or cause any trouble." (Am. Compl. ¶ 17-18.)

3

Plaintiff was out a pre-paid, non-refundable $195,858.00 bill to The Pierre, plus additional expenses of $182,142.00. (Am. Compl. ¶ 20-24, 30.) He alleges that the entire series of events was put into motion and orchestrated by Defendants' "extreme malicious and unjustified behavior" which has caused "Plaintiff, his daughter, and their entire family undue distress, irreparable emotional damage, and continued humiliation within their social circles and community." (Am. Compl. ¶ 19.)

## II.  DISCUSSION

Defendants seek to dismiss Plaintiff's Amended Complaint for the following reasons: First, Plaintiff's tortious interference with prospective economic advantage claim fails to state a claim, because it does not allege a prospective business relationship between Plaintiff and The Pierre. Relatedly, the Defendants' interference was not sufficiently alleged to have been "directed at" The Pierre.

Second, Defendants argue that the tortious interference with contract claim is deficient because it fails to allege an actual breach by The Pierre. Plaintiff also fails to allege that Defendants procured that breach by The Pierre.

Third, Defendants allege that Plaintiff's prima facie tort claim fails because it does not plead an essential element –

that Defendants' only motivation for their actions was malice toward Plaintiff himself, rather than toward his family.

Defendants do not contest Plaintiff's claim for breach of contract (Count 1) in the instant motion.

### A. Legal Standard for a Rule 12(b)(6) Motion to Dismiss

For a complaint to survive a motion brought pursuant to Federal Rule of Civil Procedure 12(b)(6), the plaintiff must have pleaded "enough facts to state a claim to relief that is plausible on its face." Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570 (2007). The Supreme Court has explained,

> A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged. The plausibility standard is not akin to a "probability requirement," but it asks for more than a sheer possibility that a defendant has acted unlawfully. Where a complaint pleads facts that are "merely consistent with" a defendant's liability, it "stops short of the line between possibility and plausibility of entitlement to relief."

Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (quoting Twombly, 550 U.S. at 556–57). "[A] plaintiff's obligation to provide the grounds of his entitlement to relief requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." Twombly, 550 U.S. at 555 (internal quotation marks and citation omitted). "Nor does a complaint suffice if it tenders 'naked assertion[s]' devoid of 'further

factual enhancement.'" Iqbal, 556 U.S. at 678 (quoting Twombly, 550 U.S. at 557). The Supreme Court further stated,

> In keeping with these principles a court considering a motion to dismiss can choose to begin by identifying pleadings that, because they are no more than conclusions, are not entitled to the assumption of truth. While legal conclusions can provide the framework of a complaint, they must be supported by factual allegations. When there are well-pleaded factual allegations, a court should assume their veracity and then determine whether they plausibly give rise to an entitlement to relief.

Id. at 679.

In considering a Rule 12(b)(6) motion, the Court must accept as true all factual allegations set forth in the complaint and draw all reasonable inferences in favor of the plaintiff. See Swierkiewicz v. Sorema N.A., 534 U.S. 506, 508 (2002); Blue Tree Hotels Inv. (Canada) Ltd. v. Starwood Hotels & Resorts Worldwide, Inc., 369 F.3d 212, 217 (2d Cir. 2004). However, this principle is "inapplicable to legal conclusions," Iqbal, 556 U.S. at 678, which, like the complaint's "labels and conclusions," Twombly, 550 U.S. at 555, are disregarded. Nor should a court "accept [as] true a legal conclusion couched as a factual allegation." Id. at 555.

> B. Tortious Interference with Prospective Economic Advantage

Under New York law, to state a claim for tortious interference with prospective economic advantage,[2] Plaintiff must allege that "(1) it had a business relationship with a third party; (2) the defendant knew of that relationship and intentionally interfered with it; (3) the defendant acted solely out of malice, or used dishonest, unfair, or improper means; and (4) the defendant's interference caused injury to the relationship." Kirch v. Liberty Media Corp., 449 F.3d 388, 400 (2d Cir. 2006) (quoting Carvel Corp. v. Noonan, 350 F.3d 6, 17 (2d Cir.2003)). In addition, the defendant must target some activities toward the third party and convince them not to enter into a continuing business relationship with the plaintiff. Fonar Corp. v. Magnetic Resonance Plus, Inc., 957 F.Supp. 477, 482 (S.D.N.Y.1997) (citing G.K.A. Beverage Corp. v. Honickman, 55 F.3d 762 (2d Cir.1995)).

The Amended Complaint adequately alleges that Defendants knew of the existence of the relationship between Plaintiff and The Pierre. (Am. Compl. ¶¶ 30-31.) However, the Amended Complaint fails to allege other facts with the requisite level of specificity sufficient to survive a motion to dismiss in two of the remaining elements.

---

[2] Tortious interference with prospective economic advantage is sometimes referred to by an alternative name: tortious interference with business relations. See Catskill Dev., L.L.C. v. Park Place Entm't Corp., 547 F.3d 115, 132 (2d Cir.2008).

1.      The Amended Complaint Does Not Adequately Allege the Existence of a "Business Relationship"

The first element of a claim for tortious interference with prospective economic advantage requires a plaintiff to allege a business relationship between plaintiff and a third party. Kirch, 449 F.3d at 400. "[W]hether plaintiff has pleaded sufficiently the first element of this claim turns on whether plaintiff had an existing or continuing relationship with the third part[y] at the time of defendants' tortious interference." Henneberry v. Sumitomo Corp. of Am., 532 F.Supp.2d 523, 548 (S.D.N.Y.2007); see Scutti Enters., LLC v. Park Place Entm't Corp., 322 F.3d 211, 215 (2d Cir.2003) ("[Plaintiff] can recover if it can prove that the defendant tortiously interfered with a continuing business or other customary relationship.")

Plaintiff must demonstrate that, at the time of Defendants' alleged interference, Plaintiff was engaged in "a continuing business or other customary relationship not amounting to a formal contract" with The Pierre. See Hannex Corp. v. GMI, Inc., 140 F.3d 194, 205 (2d Cir.1998) (quoting Restatement (Second) of Torts § 766B cmt. c (1979)). Plaintiff has not alleged the existence of any prospective business relationship with The Pierre beyond the initial contractual agreement that The Pierre would host the wedding.

8

Plaintiff argues that the facts at issue here are similar to the facts of Posner v. Lewis,[3] where the New York State Appellate Division of the Supreme Court held that a school teacher's allegations that his in-laws effectuated the denial of his tenure were sufficient to allege tortious interference with prospective contract rights and survived a motion to dismiss.

The similarities between Posner and this case are not abundantly obvious. A key element of Posner's complaint was that he continued to be unable to obtain a tenured teaching position with a public school district in his home county as a result of the defendants' conduct. Posner, 912 N.Y.S.2d at 56, 61. There are no facts in the Amended Complaint that suggest Plaintiff's contract with The Pierre contains a similar prospective element.

Plaintiff argues that after discovery the Court might find that there was no enforceable contract with The Pierre, and therefore Plaintiff would be entitled to a remedy under a tortious interference with prospective economic advantage theory.

Plaintiff has failed to plead factual content sufficient to allow the Court to draw the reasonable inference that he had an existing or continuing relationship with The Pierre after the wedding did not occur. See Iqbal, 556 U.S. 662, 678 (2009). The

---

[3] 912 N.Y.S.2d 53 (1st Dep't 2010), aff'd on other grounds 18 N.Y.3d 566 (2012).

only fact that Plaintiff alleges in support of his argument is that he had a contract for a one-time use of The Pierre to host his daughter's wedding ceremony and reception. Based on that fact standing alone, the Court cannot draw a reasonable inference that Plaintiff had an existing or continuing relationship with The Pierre after the wedding did not occur.

    2.    The Amended Complaint Does Not Adequately Allege that the Defendants Injured the Business Relationship

Even assuming arguendo that Defendants' actions were improper,[4] Plaintiff has not alleged with specificity that Defendant targeted any activity toward The Pierre with the aim of convincing the hotel not to continue a business relationship with Plaintiff. See Fonar Corp., 957 F.Supp. at 482. Plaintiff has failed to put forward any facts that support the fourth element of the tort.

---

[4] See Kirch, 449 F.3d at 400; see Carvel Corp., 350 R.3d 6 at 17-19 ("If the plaintiff claims that a non-competitor interfered with its prospective economic relations, then the Restatement suggests that the defendant should be liable where its interference was merely 'improper.' Restatement (Second) of Torts § 766B. The factors in determining whether interference is improper include the nature of the defendant's conduct, the defendant's motive, the interests of both parties, the social interests in competition and the sanctity of contract, the degree to which the defendant's conduct caused the interference, and the relationship between the parties. See id. § 767.") While the competitor/non-competitor distinction may often be blurry – as it was in Carvel Corp., where that court questioned whether the New York Court of Appeals would treat a franchisee as a competitor – in the case at bar, Plaintiff and Defendants are unambiguously non-competitors.

Accordingly, Defendants' motion to dismiss Plaintiff's claim for tortious interference with prospective economic advantage is GRANTED.

    C. <u>Tortious Interference with Contract</u>

Under New York law, "the elements of tortious interference with contract are (1) 'the existence of a valid contract between the plaintiff and a third party'; (2) the 'defendant's knowledge of the contract'; (3) the 'defendant's intentional procurement of the third-party's breach of the contract without justification'; (4) 'actual breach of the contract'; and (5) 'damages resulting therefrom.'" <u>Kirch</u>, 449 F.3d at 401–02 (2d Cir.2006), quoting <u>Lama Holding Co. v. Smith Barney Inc.</u>, 88 N.Y.2d 413, 424, 646 N.Y.S.2d 76, 668 N.E.2d 1370 (1996). Under New York law, a tortious interference with contract claim must plead that a defendant used "wrongful means" to induce the third party to breach the contract. See <u>Guard–Life Corp. v. S. Parker Manufacturing Corp.</u>, 50 N.Y.2d 183 (1980); <u>accord</u> <u>NBT Bancorp Inc., et al v. Fleet/Norstar Financial Group, Inc.</u>, 87 N.Y.2d 614 (1996). In <u>Guard–Life</u>, the New York Court of Appeals defined "wrongful means" to include "physical violence, fraud, or misrepresentation, civil suits and criminal prosecutions, and some degrees of economic pressure." <u>Guard–Life Corp.</u>, 50 N.Y.2d at 191. Malice – in the sense of intending actual harm to the plaintiff because of spite or ill-feelings – is not required.

11

The gist of the action is not the intent to injure, "but to interfere without justification with plaintiff's contractual rights with knowledge thereof." Am. Cyanamid Co. v. Elizabeth Arden Sales Corp., 331 F. Supp. 597, 608 (S.D.N.Y. 1971) (quoting Lamb v. S. Cheney & Son, 227 N.Y. 418, 422 (1920)).

Plaintiff properly alleges (1) the existence of a contract between Plaintiff and The Pierre, and (2) Defendants' knowledge of that contract.[5] Am. Compl. ¶ 30. Actual knowledge of the existence of the contract can be reasonably attributed to the alleged tortfeasor.

Defendants argue that the tortious interference with contract claim is deficient because it fails to allege an actual breach by The Pierre and because it does not allege that Defendants procured that breach.

Plaintiff argues that Defendants, in essence, made the contract un-performable by The Pierre; one cannot host a wedding at which the guests have been ordered not to come. By "unilaterally causing the wedding not to occur" intentionally and "with malice," Defendants procured The Pierre's inability to host the event. (Am. Compl. ¶ 31.)

### 1. Breach of the Contract

---

[5] Defendants do not contest these points. See Defs.'s Mot. Dismiss at 6.

The tort of intentional interference with contractual relations requires the plaintiff to allege and prove that the defendant induced or otherwise caused a third party to breach. See, e.g., Benjamin Goldstein Productions, Ltd. v. Fish, 603 N.Y.S.2d 849, 851 (1st Dep't.1993) (tortious interference with contract claim "fatally flawed and academic" where plaintiffs failed to show breach of the underlying contract by third parties); Universal City Studios v. Nintendo Co., Ltd., 797 F.2d 70 (2d Cir), cert. denied, 479 U.S. 987 (1986) (tortious interference with contract claim requires plaintiff to establish that defendant induced a breach of the contract); see generally Restatement (Second) of Torts § 766 (1979); cf. Museum Boutique Intercontinental, Ltd. v. Picasso, 886 F. Supp. 1155, 1163 (S.D.N.Y. 1995); S & S Hotel Ventures Ltd. Partnership v. 777 S.H. Corp., 489 N.Y.S.2d at 479–81 (1985).

In the present case, Plaintiff has not sufficiently alleged that The Pierre breached its contract, nor has Plaintiff alleged that Defendants "induced or otherwise caused" The Pierre to fail to perform its contractual duty to host the wedding ceremony and reception. On the face of the Amended Complaint, Defendants and The Pierre do not interact with each other at all.

Plaintiff thus fails to state a claim for tortious interference with contract. Defendants' motion to dismiss this claim is GRANTED.

D. <u>Prima Facie Tort</u>

A prima facie tort has been defined in New York law as the infliction of intentional harm, causing special damages, without excuse or justification, by an act or series of acts which would otherwise be lawful. <u>Ross v. Mitsui Fudosan, Inc.</u>, 2 F.Supp.2d 522, 531 (S.D.N.Y. 1998) (citing <u>Curiano v. Suozzi</u>, 63 N.Y.2d 113 (1984)).

The first element – the infliction of intentional harm – requires "disinterested malevolence," which has been interpreted to mean that the plaintiff cannot recover unless the defendant's conduct was "not only harmful, but done with the sole intent to harm."[6] <u>Hall v. City of White Plains</u>, 185 F. Supp. 2d 293, 304 (S.D.N.Y. 2002) (quoting <u>Twin Lab., Inc. v. Weider Health & Fitness</u>, 900 F.2d 566, 571 (2d Cir. 1990)); <u>see</u> <u>American Bank & Trust Co. v. Federal Reserve Bank</u>, 256 U.S. 350, 358 (1920) (defining "disinterested malevolence"). Other non-malicious motives the defendant may have, such as a profit-seeking motive or the motive to compete for a business advantage, will defeat the first element of a <u>prima facie</u> tort claim. <u>Twin Lab.</u>, 900 F.2d at 571.[7]

---

[6] Disinterested malevolence is synonymous with maliciousness. The terms are used interchangeably in this subsection.
[7] Even where a plaintiff can show that the defendant's conduct was motivated by disinterested malevolence, the defendant may not be liable in <u>prima facie</u> tort if their conduct was justified by public policy considerations (i.e., that the claim fails the third element of the tort). In New York, malicious conduct is not actionable in <u>prima facie</u> tort if that conduct is warranted by

14

The second element of prima facie tort – the allegation of special damages – requires that the plaintiff fully and accurately state their damages, with sufficient particularity to both identify those damages and to relate the actual loss to the allegedly tortious acts. Hall v. City of White Plains, 185 F. Supp. 2d 293, 305 (S.D.N.Y. 2002) (citing Broadway & 67th St. Corp. v. City of New York, 100 A.D.2d 478, 486 (1st Dep't 1984)). Non-specific, conclusory allegations do not meet the pleading requirement. Matherson v. Marchello, 473 N.Y.S.2d 998, 1000 (2d Dep't 1984).

Today it is considered to be a settled element of the doctrine that Defendants' acts or series of acts must be "otherwise lawful" to state a claim under the fourth element of the tort.[8] See, e.g., Brandt v. Winchell, 3 N.Y.2d 628, 633 (1958) (incorporating without explanation the requirement that defendant's behavior be "otherwise lawful").

---

a persuasive legal or social motive. See Burns Jackson v. Lindner, 437 N.Y.S.2d 895 (Sup. Ct. 1981), modified 452 N.Y.S.2d 80 (1982), aff'd, 59 N.Y.2d 314 (1983) ("The critical issue concerning the intent element is not whether the harmful act was solely malicious, to the exclusion of any other purpose, but rather whether it was justified by any legal or social purpose.").

[8] Under some circumstances, there may be flexibility to this requirement. Scholars have noted that immunizing a defendant's conduct from liability because of that conduct's criminality (since criminal conduct is not "otherwise lawful") can lead to absurd results. See Vandevelde, 79 Ky. L.J. 519, 539-540 (1990-1991). This Court has no reason to explore this wrinkle further, because Defendants' conduct is otherwise lawful.

Since the prima facie tort doctrine makes a defendant liable for conduct that is not actionable absent special damages and the specific intent to injure the plaintiff with malice, courts have been reluctant to avoid applications that would weaken the doctrine's strict pleading requirements.

The Supreme Court of the State of New York, Appellate Division, stated the rule regarding the doctrine and its function in Ruza v. Ruza:

> The key to the prima facie tort is the infliction of intentional harm, resulting in damage, without excuse or justification, by an act or a series of acts which would otherwise be lawful. The need for the doctrine of prima facie tort arises only because the specific acts relied upon – and which it is asserted caused the injury – are not, in the absence of the intention to harm, tortious, unlawful, and therefore, actionable.

146 N.Y.S.2d 808, 811 (1st Dep't 1955).

Permitting Plaintiff to maintain an action here would extend the remedy well beyond its circumscribed limits. In short, Plaintiff has fully and precisely stated the monetary damages he incurred,[9] but he cannot causally link these damages to Defendants' acts. There is no indication in these pleadings

---

[9] See Am. Compl. ¶¶ 9-14.

16

that The Pierre was not ready and willing to uphold its half of the contractual relationship. Even if the facts pleaded are interpreted liberally – that is, assuming that Defendants did call and text many guests to tell them not to come, threaten Plaintiff's son at the rehearsal dinner, promise to fire the groom (his son) from the family business and remove him from the father's will if he went forward with the marriage – that does not impact the ready willingness of The Pierre to serve as the wedding venue. The complaint does not suggest a sufficient causal relationship between the bad acts of the Defendant and Plaintiff's laundry list of wedding expenses. <u>Prima facie</u> tort developed to provide a remedy for civil wrongs that did not fit into traditional legal categories; if, as here, the damages alleged are cognizable as traditional contract claims, Plaintiff will not be permitted to plead them in <u>prima facie</u> tort.

Accordingly, Defendant's motion to dismiss this claim is **GRANTED.**

III. CONCLUSION

When a complaint has been dismissed, "[t]he court should freely give leave [to amend] when justice so requires." Fed. R. Civ. P. 15(a)(2). However, a court may dismiss without leave to amend when amendment would be "futile," or would not survive a

motion to dismiss. Hutchison v. Deutsche Bank Sec. Inc., 647 F.3d 479, 491 (2d Cir. 2011).

Permitting Plaintiff to file a Third Amended Complaint would be futile. Plaintiff cannot allege facts under these circumstances that would make the tortious interference with prospective economic advantage claim or the tortious interference with contract claim viable. Moreover, "Plaintiff has been given ample opportunity to amend his pleadings and the Court can only afford him so many bites at the apple." Best v. City of New York, No. 12 Civ. 7874, 2014 WL 163899, at *3 (S.D.N.Y. Jan. 15, 2014). Accordingly, Plaintiff will be denied leave to re-plead.

Defendant shall answer the portion of the Amended Complaint that has not been dismissed (Count 1) within 21 days of the date of this Memorandum & Order.

SO ORDERED.

DATED:   New York, NY
         October 25, 2018

_Deborah A. Batts_
Deborah A. Batts
United States District Judge